## Case No. 16,859.

### Ex parte VAN HOVEN.

### [4 Dill. 415.] [1]

### Circuit Court, D. Minnesota. 1876.

EXTRADITION—TREATY WITH BELGIUM—WARRANT OF ARREST—MANDATE OF THE SECRETARY OF STATE — SUFFICIENCY OF COMPLAINT.

1. Under the extradition treaty of the United States with Belgium,—treaties 1873–74, p. 120 [18 Stat. 804],—it is no ground of discharge of the alleged fugitive, on habeas corpus, that the warrant of arrest was issued by the proper judicial officer instead of by the president.

2. It need not appear by distinct recital in the mandate of the secretary of state to the judicial officers of the government, that a warrant for the arrest of the alleged fugitive, for the crime imputed to him, ever issued in Belgium. The judicial department will presume from the

1 [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

mandate of the secretary of state that this was done.

3. A complaint, under oath, made by the consul-general of Belgium, before a proper commissioner in the Southern district of New York, upon the strength of telegrams and depositions taken in Belgium, *held* sufficient to justify the court in remanding the prisoner for examination by the commissioner before whom the complaint was made and who issued the warrant of arrest.

Henry Van Hoven presented a petition to this court June 22, 1876, setting forth that he is restrained of his liberty and imprisoned by David H. Crowley in the city of St. Paul, and district of Minnesota; that he is informed and believes that he is imprisoned under the color of the authority of the United States, by virtue of certain proceedings initiated for the extradition of the petitioner under a certain treaty entered into between the United States of America and the kingdom of Belgium, on the 19th day of March, 1874; that he is thus restrained of his liberty in violation of the constitution of the United States and of said treaty. The petitioner prays for a writ of habeas corpus for the reason that no warrant has been issued for his arrest and detention and that he is not charged with any crime mentioned in the treaty, and that no legal proceedings whatever have been had for his extradition, and that his arrest and detention are in violation of law. A writ of habeas corpus was allowed, returnable forthwith. At the hearing, David H. Crowley, in obedience to the writ of habeas corpus, appeared in court with Henry Van Hoven in charge, and made a return, setting forth that he was a deputy marshal of the United States for the Southern district of New York, and that he held the petitioner by virtue of a warrant issued by Kenneth G. White, a commissioner of the circuit court of the United States for the Southern district of New York, specially appointed to execute the provisions of title 66 of the Revised Statutes for giving effect to certain treaty stipulations, commanding all marshals of the United States for any district, and their deputies, and each of them, to bodily apprehend, arrest, and imprison the said Van Hoven, which warrant was delivered April 7th, 1876, to the marshal of the Southern district of New York, and April 16th the respondent was directed and authorized by said marshal to execute said warrant. This warrant, in substance, states that Charles Mali, consul for the kingdom of Belgium, has made complaint and application before Kenneth G. White, commissioner as aforesaid, in the city of New York, in the Southern district of New York, for the arrest of Henry Van Hoven, charged with the crime of forgery, to wit: "With having, within the jurisdiction of the kingdom of Belgium, in violation of the laws thereof, and for his own benefit, and on or about the 21st day of December, 1875, wilfully and knowingly and maliciously uttered and put in circulation, and offered for discount, and caused to be discounted by the

firm of Nagelmacker & Sons, doing business as bankers in the city of Liege, and received the proceeds of two certain bills of exchange, drawn and endorsed by the said Van Hoven, for the amount of eight thousand francs, and purporting to have the acceptance of a certain A. Lefevre, doing business as merchant at Brussels, at Rue Veuve, the said acceptance being a forgery, and known to be such by the said Van Hoven." The warrant recites also a similar discount of a bill of exchange for nine thousand five hundred francs, by the banking house of Messrs. Victor Terwangue & Co., in the city of Liege, in Belgium, purporting to have upon it the acceptance of a certain Vois Comprier, at Maestricht, the said acceptance being a forgery. The respondent further makes return of the complaint of Charles Mali, the consul-general of Belgium at the city of New York, annexed to the warrant of the commissioner, with certain depositions of witnesses taken before a judge in the kingdom of Belgium, and also a mandate issued under the hand of the secretary of state of the United States and the seal of the department of state.

The mandate of the secretary of state is in the following words:

"Department of state, to any justice of the supreme court of the United States, any judge of the circuit or district court of the United States in any district, any judge of a court of record of general jurisdiction in any state or territory of the United States, or to any commissioner specially appointed to execute the provisions of title 66 of the Revised Statutes of the United States, for giving effect to certain treaty stipulations between this and foreign governments, for the apprehension and delivery up of certain offenders: Whereas, pursuant to the provisions of the convention between the United States of America and Belgium, of the 19th March, 1874, for the mutual delivery of criminals, fugitives from justice, in certain cases, Mr. Maurice Delfosse, accredited to this government as envoy extraordinary and minister plenipotentiary of Belgium, has made application to the proper authorities thereof for the arrest of one Van Hoven, charged with the crime of forgery, and alleged to be a fugitive from the justice of Belgium, and who is believed to be within the jurisdiction of the United States; and, whereas, it appears proper that the said Van Hoven should be apprehended and the case examined in the mode provided by the laws of the United States aforesaid: Now, therefore, to the end that the above named officers, or any of them, may cause the necessary proceedings to be had in pursuance of said laws, in order that the evidence of the criminality of the said Van Hoven may be heard and considered, and, if deemed sufficient to sustain the charge, that the same may be certified, together with a copy of all the proceedings, to the secretary of state, that a warrant may issue for his surrender pursuant to said con-

vention, I certify the facts above recited. In testimony whereof, I have hereunto signed my name and caused the seal of the department of state to be affixed. Done at the city of Washington, this 8th day of March, A. D. 1876, and of the independence of the United States the one hundredth. (Signed.) Hamilton Fish, Secretary of State."

The complaint of Charles Mali, the consul-general of Belgium at the city of New York, upon which the commissioner issued his warrant for the arrest of Van Hoven, is in the following words:

"Circuit Court of the United States for the Southern District of New York, in the Matter of the Application of the Belgian Government for the Extradition of Henry Van Hoven—Before Kenneth G. White, United States Commissioner. Southern District of New York, ss: Charles Mali, being duly sworn, deposes and complains as follows: That he is the consul-general of the kingdom of Belgium at this city of New York, and that he acts herein as such consul as aforesaid. That the above named Henry Van Hoven is charged with the commission, within the territories and jurisdiction of the said kingdom of Belgium, of the crime of forgery, as it is specifically mentioned and provided for in a convention between the United States of America and the kingdom of Belgium for the surrender of criminals, proclaimed on May 1st, 1874, after the same was concluded at Washington, on the 19th of March, and after the ratifications were exchanged, on the 31st of March, 1874, and April 30th, 1874, in consequence of its being advised by the senate on the 27th of March, 1874. That the above named Henry Van Hoven is a fugitive from the justice of Belgium, and that he is to be found within the territories, limits, and jurisdiction of the United States. That, in pursuance of the aforesaid convention between the United States and the kingdom of Belgium, Maurice Delfosse, envoy extraordinary and minister plenipotentiary of the kingdom of Belgium, accredited to this government, has made due requisition on the president of the United States for the surrender of the said Henry Van Hoven, and upon such requisition the secretary of state has issued a mandate, dated the 8th day of March, 1876, certifying to the propriety that the said Henry Van Hoven should be apprehended, and his case examined in the mode provided by the acts of congress, as is more fully shown in the said mandate, which is hereto annexed and made a part of this complaint, and to which deponent prays to refer. Wherefore the said consul, by virtue of his office as aforesaid, and for the purpose of giving effect to the said convention, now charges, on information and belief, the said Henry Van Hoven with the commission of the crime of forgery, to-wit: with having, within the jurisdiction of the kingdom of Belgium, and in violation of the laws thereof, and for his own benefit, and on or about the 21st day of December, 1875, wilfully and know-

ingly and maliciously uttered and put in circulation, and offered for discount to, and caused to be discounted by, the firm of Nagelmacker & Sons, doing business as bankers in the city of Liege, and received the proceeds of two certain bills of exchange drawn and endorsed by the said Van Hoven, for the amount of eight thousand francs, and purporting to bear the acceptance of a certain A. Lefevre, doing business as merchant at Brussels, Belgium, at Rue Veuve, the said acceptance being a forgery, and known to be such by the said Van Hoven; and for having, on or about the same date of the 21st day of December, 1875, wilfully, knowingly, and maliciously uttered and put in circulation, and offered for discount to, and caused to be discounted by, the firm of Victor Terwangue & Co., doing business as bankers in the city of Liege, Belgium, and recovered the proceeds of another certain bill of exchange drawn and endorsed by the said Van Hoven, for the amount of nine thousand five hundred francs, and purporting to bear the acceptance of a certain Vois Comprier, at Maestricht, the said acceptance being a forgery, and known to be such by the said Van Hoven. That the information of said complainant, Charles Mali, is derived from telegrams from the proper authorities of the kingdom of Belgium, as well as from certain depositions of Gustave Tripnels, Victor Terwangue, and Augustin Dubois, properly taken before Adolph Nilson, one of the justices of the district of Liege, Belgium, and duly certified by John Wilson, consul of the United States of America at Brussels, kingdom of Belgium, to be legally and properly authenticated, so as to be entitled to be received in evidence in support of the criminal charges mentioned therein, and for the purpose of extradition proceedings, as is provided in section 5271 of title 66 of the Revised Statutes of the United States. And the said consul, therefore, entering this complaint, made under oath, charging the said Henry Van Hoven with the crime of forgery, as enumerated in article 11 of said convention for the extradition of said criminals between the kingdom of Belgium and the government of the United States, makes application to Kenneth G. White, a commissioner appointed by the circuit court of the United States of America for the Southern district of New York, in the Second circuit, that his warrant be issued for the apprehension of said Henry Van Hoven, so charged, that he may be brought before the said commissioner, to the end that the evidence of his criminality may be heard and considered, and that on such hearing a certificate be made by the said commissioner as to the evidence thereof being deemed by him sufficient to sustain the charge under the provisions of the aforementioned convention, and for the purpose of the surrender of the said Henry Van Hoven, according to the stipulations of said convention. (Signed.) Charles Mali, Consul of Belgium."

"Sworn to before me, this 7th day of April, 1876. Commissioner duly appointed by the cir-

cuit court of the United States for the Southern district of New York, and specially appointed to execute the provisions of title 66 of the Revised Statutes of the United States, for giving effect to certain treaty stipulations."

The first article of the said treaty with Belgium (Treaties 1873–74, p. 120), is as follows: "The government of the United States and the government of Belgium mutually agree to deliver up persons who, having been convicted of or charged with any of the crimes specified in the following article, committed within the jurisdiction of one of the contracting parties, shall seek an asylum or be found within the territories of the other: provided, that this shall only be done upon such evidence of criminality as, according to the laws of the place where the fugitive or person so charged shall be found, would justify his or her apprehension and commitment for trial if the crime had been there committed." Among the crimes enumerated in the second article is the crime of forgery and the uttering of forged papers. The sixth article of the treaty is as follows: "Requisitions for the surrender of fugitives from justice shall be made by the respective diplomatic agents of the contracting parties; or, in the event of the absence of these from the country, or its seat of government, they may be made by superior consular officers. If the person whose extradition may be asked for shall have been convicted of a crime, a copy of the sentence of the court in which he may have been convicted, authenticated under its seal, and an attestation of the official character of the judge by the proper executive authority, and of the latter by the minister or consul of the United States or of Belgium respectively, shall accompany the requisition. When, however, the fugitive shall have been merely charged with crime, a duly authenticated copy of the warrant for his arrest in the country where the crime may have been committed, and of the depositions upon which such warrant may have been issued, must accompany the requisition as aforesaid. The president of the United States, or the proper executive authority of Belgium, may then issue a warrant for the apprehension of the fugitive, in order that he may be brought before the proper judicial authority for examination. If it should then be decided that, according to the law and the evidence, the extradition is due pursuant to the treaty, the fugitive may be given up, according to the forms prescribed in such cases."

The prisoner, on the said return, moves to be discharged from the custody of the said Crowley.

C. K. Davis, for petitioner.  John Y. Page, for Crowley.

Before DILLON, Circuit Judge, and NELSON, District Judge.

DILLON, Circuit Judge.  Requisition for the surrender of the petitioner to the Belgium government is recited, in the mandate of the secretary of state, to have been duly made upon the executive authority of this government. Complaint before a duly authorized commissioner was made by the consul-general of Belgium in New York, and a warrant for the apprehension of the petitioner issued, on which he has been arrested and is now in custody, for the purpose of being taken before the commissioner who issued the warrant, for an examination of the charge against him, made in the complaint.

It is urged that the petitioner is entitled to be discharged on several grounds:

1. That, under the treaty (article 6), the president of the United States is required to issue a warrant for the apprehension of the fugitive, that he may be brought before the proper judicial authority for examination. The object of this provision is that the legal proceedings for the surrender of a fugitive may have the sanction of the executive department.  Ex parte Kaine [Case No. 7,597]. This is given in this case by the mandate of the secretary of state.  In re Farez [Id. 4,-644].  Under our system of the separation of the powers of the government into departments, the warrant of arrest issues from the judicial department, and the substance, spirit, and purpose of the treaty have been complied with in this regard.

2. It is urged that the petitioner is entitled to be discharged because it does not affirmatively appear in the mandate of the secretary of state, or in the complaint, that any warrant for the arrest of the petitioner in Belgium, for the crime imputed, ever issued in that country.  Under the treaty it may be true that no surrender of the petitioner to the Belgian government can legally be demanded, unless proceedings in that country have been instituted, and a warrant of arrest there issued.  Such warrant, and the depositions upon which the warrant issued, must accompany the requisition upon this government for the surrender.  Such is the treaty.  The judicial department will presume, from the mandate of the secretary of state, that this was done. It may be that if it is shown on the hearing, or at any subsequent stage of the proceedings, that no warrant for the arrest of the petitioner in Belgium ever issued in that country, and no depositions, such as are required by the treaty, were ever made in Belgium, the judicial department of this country, on its power being invoked, would prevent the extradition.  Ex parte Kaine, supra.

3. It is next urged that the complaint is insufficient, because filed by the consul-general, who does not profess to have any personal knowledge of the matters charged against the petitioner, but whose information is derived from telegrams from the Belgian authorities, and certain depositions taken in Belgium, not before us.  In re Farez [Cases Nos. 4,645 and 4,646].  Unlike the first complaint in this case, the present complaint is specific in the charges made against the defendant.  This court cannot hear the case on the merits.  It

belongs to the commissioner who issued the warrant to decide whether, according to the law and the evidence, the extradition is due pursuant to the treaty. . Under the decisions and practice in the Second circuit, the order of the commissioner may, it would seem, be revised and corrected by the federal courts therein, at the instance of the petitioner. In re Henrich [Case No. 6,369]. Motion to discharge the petitioner denied. Ordered accordingly.

·NOTE. The order of Nelson, J., in this case when before him. was affirmed on appeal; and a petition was presented for another writ of habeas corpus, to the circuit court, at the June term, 1876, in the proceeding upon which the foregoing opinion of the circuit judge was pronounced. Subsequently, the petitioner filed in the circuit court a plea to the effect that, in fact, no criminal proceedings whatever had ever been instituted in Belgium against him. and that no warrant ever issued. and no depositions had ever been taken in that country. This plea was traversed by the officer having the petitioner in custody, and on a hearing subsequently had before Nelson, J., the warrant of arrest in Belgium, and certain depositions there taken, were produced. whereupon the petitioner was remanded to the custody of the deputy marshal, to be taken for examination before the commissioner who issued the warrant of arrest.

In the Albany Law Journal (volume 18, p. 45). July 20, 1878, the reader will find a carefully prepared and valuable article, from the pen of Judge Spear, on the subject of "Extradition from the United States." The learned writer states the leading statutable provisions, and collects the principal decisions in this country respecting the executive and also the auxiliary judicial functions involved in the delivery, by the United States, of a fugitive criminal to a foreign government. under treaty stipulations. He concludes his paper in these words: "The law, by thus distributing the legal functions to be performed between the executive and judicial departments of the government. secures to the party accused the highest certainty that he will be surrendered to a foreign government only when all the necessary conditions are present. The judiciary cannot surrender him; and the president cannot do it until the judiciary decides that the case is a proper one for delivery, and even then the president may revise and reject that decision. This furnishes ample protection against any abuse of the extradition power. especially when we add that the writ of habeas corpus. as a means of testing the legality of the proceedings. is always available to the party, if sought before his actual surrender and removal from the country."